CaRUTHERS, J.,
delivered the opinion of the Court.
On the 18th May, 1854, the plaintiffs sold to the defendant seventy-six hogsheads of tobacco, which had already been shipped to various commission-houses in New Orleans, at five and a fourth cents per pound, “to be settled by the New Orleans weights. Said Cardwell agrees on his part that said Hogg & Belcher may keep the bills of lading, and that the accounts of sales may be made out and proceeds paid to them; and further agrees to pay the storage at the river levee, the. insurance, freights, and all other expenses attending the same after leaving the landing levee; and if, after counting all at five and a quarter *154 cents, there is any deficit, he agrees to pay it to Hogg & Belcher; hut if any surplus remains, said Hogg & Bel-cher agree to pay the same to said Cardwell.” This agreement in writing was signed by the parties.
The tobacco was sold and the proceeds paid to the plaintiffs.
There was a deficit or loss to Cardwell of about two thousand dollars, as is alleged, for which this suit was brought. The recovery was resisted upon two grounds:
1. Because the sale of the tobacco in the hands of Yeatman & Co., by the order of the plaintiffs, was prematurely made, and a much larger price would have been obtained if it had been held up until the month of December, as it should have been, in conformity with the wishes of Cardwell. Such is the evidence of Yeatman, who also states that if left to his own judgment and the instructions of Cardwell, he would not have sold so soon. The defendant’s third plea raises the question of his right to damages on this ground, which he claims he is entitled to recover.
The demurrer to this plea was overruled. Whether this was correct, is the first question. And that depends upon the construction of the written contract. The plea is based upon the idea that the defendant had a right to control the sale, and of this opinion was the Court. In this construction we cannot concur, and therefore think the plea was not good, and the demurrer should have been sustained.
The tobacco had been shipped, and the parties traded upon their respective opinions and calculations as to the prospects of a profit. The sellers preferred five and a quarter cents to taking the chances of the market; and *155 the buyer, with tbe same means of forming an opinion, was willing to risk it, and look to an enhanced price for bis profits. His object was, of course, to make a speculation upon bis superior judgment as to tbe prospective state of tbe market at New Orleans. Both parties expected to derive advantage from the trade. There was no other motive for making it.
Such is the object of both sides in all such transactions. The writing must be construed by itself, without extraneous aid. The sellers were, 1, to retain the bills of lading; 2, the accounts of sales were to be made out to them'; and, 3, they were to receive the proceeds, and retain them to the extent of five and a quarter cents to the pound, and to pay over any excess to Cardwell; and also to receive from him any deficiency that might result on account of the article not paying expenses and the purchase-money at the price at which it might be sold. Another fact to be looked to on this question is, that the sellers were to get their pay out of the proceeds. In the face of all these facts, nothing short of an express stipulation to that effect would be sufficient to show that it was the intention of the parties, so far as it is developed in, the instrument, to confer the power to control and direct the sale upon the purchaser.
It is manifest, then, that by the contract all power over the time and proceeds of the sale was reserved by the plaintiffs. But still, as they were to act for defendant as well as themselves in that matter, they were bound to a faithful agency, and could not recklessly disregard his interest. Whether they were guilty of infidelity to Ms interest in making the sale at the time they did, must depend upon all the circumstances by which they were sur *156 rounded. And among these, the fact that they were not to get their money until a sale was made, is not to be overlooked.
But, on the other hand, it was their duty to fairly weigh the existing considerations tending to encourage a hope of higher prices in a reasonable time, against those leading to an opposite conclusion. They were not bound, however, to wait an unreasonable time for their money, in order to favor the chances of defendant to make a speculation or to save him from a loss. These risks he took upon himself in the adventure, and was bound to abide by the consequences to result from a fair and reasonable exercise of the agency intrusted to the plaintiffs. Otherwise, he should have stipulated for the control himself, as a part of the contract. The contract of purchase was on the 18th May, 1854, and the sale at New Orleans was made on the 6th August, in obedience to an order of the plaintiffs of the 3d of July of the same year. The commercial year closes in New Orleans on the last day of August of each year. The time the sale was delayed would seem to be reasonable in view of the circumstances; and we can .see no sufficiently conclusive ground in the proof to create the conviction' that an early rise would occur in the price, to have made it the duty of plaintiffs to submit to a longer delay. But this would be a question for the jury, under a proper plea and right instructions from the Court. This plea does not raise the question, and is no defence under our construction of the contract. The demurrer, then, should have been sustained; and for this error jve would have to reverse.
2. The next, general ground of defence made in the argument with reference to the proof is, that the quality *157 of tlie tobacco ivas misrepresented by Belcber, either fraudulently or through mistake. If this be so, and such representations were made before or at the time of the sale, and were relied upon by Cardwell, and from which an injury resulted to him, he would be entitled to damages to the extent of the injury. These are all questions of fact, to be left to a jury on a proper charge; and upon them, of course, we give no opinion.
The measure of damages would be the difference between the value of the article as represented and as it turned out in fact to be. If the false representations were made after the trade was concluded, or did not constitute an inducement to it, or were mere opinions, they would not constitute ground for damages. If they were made to influence the bargain, and did have that effect, they would be equivalent to a warranty, and the vendors bound to answer for a breach. Whether they were made innocently or fraudulently could make no difference, if an injury resulted to the purchaser, who relied upon them truth, and made the trade on the faith of their correctness. The damage to the vendee in such cases does not depend upon the motives of the vendor.
It is the same in its effects to him whether the statement by which he was deceived and misled to his injury were honestly or fraudulently made. There would be a great moral but no legal difference. The fact that this matter was not inserted in the written contract can make no difference. It was not a part of the contract of sale, but the inducement to it. It was a distinct collateral matter, on which liabilities arise that may be enforced.
Then, if the proof makes out a case of misrepresentations, by which the defendant was misled and which turned *158 out to be injurious to him, be bas a right to damages. And tbis, arising out of and being connected with tbe same transaction, may be relied- upon in recoupment or abatement of tbe plaintiffs’ demand. It is in tbe nature of an equitable set-off, and avoids circuity of action. Eor tbis reason, tbe Courts are more and more inclined to favor tbis description of defence, so far as it can be maintained upon principle. In two recent cases in tbe Supreme Court of tbe United States, (one in 9 Howard, 214, and tbe other in 11 Howard, 461,) tbe doctrine has been very fully examined and firmly settled. In tbe first case it is said, that “upon tbe principles of justice and convenience, and with a view to prevent litigation and expense, where fraud bas occurred, or where there bas been a failure of consideration, total or partial, or breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party when sued on such contract, and that be shall not be driven to a cross action.”
Tbe same doctrine was affirmed in tbe other case. Tbe cases in 2 Wend., 431, and 8 Wend., 109, cited in Sedg-wick on Damages, 439, 440, are to tbe same effect. It does not seem to be very well settled whether tbe defence can be relied upon under tbe general issue without special plea or at least notice. Dut it is doubtless tbe better practice to plead it, to avoid surprise to tbe other party. Tbis may be done when tbe cause is returned for a new trial.
Judgment reversed.