**Steve L. ELCHLEPP, Jr., et al.**

v.

**Emol HATFIELD, et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

April 24, 2008 Session.

July 30, 2008.

Permission to Appeal Denied by
Supreme Court Jan. 26, 2009.

Robert W. Knolton, Oak Ridge, Tennessee, for the Appellants, Emol Hatfield and Wilma Hatfield.

Johnny V. Dunaway, LaFollette, Tennessee, for the Appellees, Steve L. Elchlepp, Jr. and Janis A. Bloome–Elchlepp.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

The buyers of a house and real property brought this action against the sellers and a termite control company, alleging that the house was completely infested with termites to the extent that it was worthless and unsalvageable. The buyers charged the sellers with fraudulent and negligent misrepresentation, fraudulent concealment of the extent of termite damage, and breach of contract. The buyers alleged that the termite control company was negligent in its inspection of the house. Following a six-day jury trial, the jury found in favor of the buyers, holding the sellers 70% at fault and the termite control company 30% at fault and awarding the buyers $55,000 in damages. The trial court also awarded the buyers $25,000 in attorney's fees pursuant to the real estate sales contract. We find that the jury verdict is supported by material evidence and that the trial court committed no reversible error in its jury instructions and evidentiary rulings, and consequently affirm the trial court's judgment.

## I. Background

In 2001, Steve L. Elchlepp and his wife Janis A. Bloome–Elchlepp ("the Elchlepps") began discussions and negotiations to purchase a house and approximately 4.6 acres of lakefront property from Emol Hatfield and Wilma Hatfield. Mr. Hatfield had personally constructed and remodeled the house. The parties agreed on a purchase price of $280,000 for the property. During a walk-through inspection of the house, Mr. Elchlepp discovered termite-damaged areas in the flooring and a support beam in the crawlspace area of the basement. When he asked Mr. Hatfield about it, Mr. Hatfield responded that he was unaware of any termite problem with the house and that it had to be a localized problem because he had never had any termite or pest problems in the rest of the house. Mr. Hatfield told Mr. Elchlepp that he would take $5,000 off the purchase price to cover the expense of remedying the termite damage they had found.

The parties executed the real estate sale contract on July 15, 2001. In August of 2001, prior to the closing of the sale, the Elchlepps received a copy of an inspection report of White Termite and Pest Control Company dated July 17, 2001, that did not reveal any further termite damage beyond what had been discovered in the walk-through inspection. The report stated that the house was treated for the termite infestation by White on July 17, 2001. The sale closed on October 31, 2001, at which time the Hatfields provided a Tennessee residential property condition disclosure statement that stated "moisture and termites in floor area," but indicated that they were unaware of any defects in the interior and exterior walls, ceilings, windows, and doors of the house.

After they moved in, the Elchlepps quickly discovered that the termite infesta-tion and damage to the house was much greater than the localized area they had observed before the closing. Nearly all the areas of the house, including the walls, door and window frames, support posts, and floors, were actively infested with termites. The Elchlepps discovered areas of floors that had been covered with several layers of additional flooring; termite tubes on the walls that had been spackled and wallpapered over; and termite damage to the wood siding of the house that Mr. Hatfield and a helper had covered with vinyl siding. Mr. Elchlepp accidentally put his hand through one of the interior walls, and put his foot through the floor in a place in the bedroom where the Hatfields had previously placed a bed. Dayton Hylton, an entomologist and owner of Dayton's Pest Control, attested in his affidavit that he had inspected the house and that "the termite infestation was pervasive from one end of the house to the other." Paul Tucker, a licensed home inspector with a master's degree in structural engineering, testified at trial that his recommendation was to demolish the house because the cost of repairing the house would be significantly higher than the cost of building a new one.

The Elchlepps brought this action against the Hatfields alleging intentional misrepresentation, fraudulent concealment, negligent misrepresentation, breach of contract, and violation of the Tennessee Consumer Protection Act. The Elchlepps further alleged that White Termite and Pest Control Company was liable for damages resulting from its negligent inspection of the house prior to closing. After a six-day jury trial, the jury found the Hatfields liable for intentional misrepresentation, misrepresentation by concealment, negligent misrepresentation, and breach of contract. The jury found White Termite and Pest Control liable for negligent mis-

representation. The verdict assessed the Hatfields to be 70% at fault, White Termite to be 30% at fault, and no fault was assessed to the Elchlepps.

The verdict form instructed the jury to "[l]imit your damage consideration specifically to termite damage. Value of the land is not a consideration in determining the amount of damages." The jury awarded the Elchlepps $55,000 in compensatory damages and declined to award any punitive damages. Upon a properly supported motion by the Elchlepps for discretionary costs and attorney's fees pursuant to the contract, the trial court awarded them $25,000 in attorney's fees in addition to discretionary costs. White Termite and Pest Control Company paid its portion of the judgment and has not appealed the trial court's decision incorporating the jury verdict.

## II. Issues Presented

The Hatfields appeal, raising the following issues, as restated:

1. Did the trial court err in applying the preponderance of the evidence standard rather than the clear and convincing evidence standard to the claims of fraudulent or intentional misrepresentation?

2. Did the trial court err in instructing the jury that it should consider only the termite damage to the house as the measure of damages and that the value of the land was not a consideration in measuring damages?

3. Is there material evidence supporting the jury verdict?

4. Did the trial court err in instructing the jury on the "missing witness" rule, allowing the Elchlepps' attorney to argue that the inference raised by the missing witness rule should be applied regarding an unnamed person who helped Mr. Hatfield put vinyl siding on the house, and in

refusing to allow White Termite and Pest Control's attorney to argue that the missing witness rule should be applied to a termite expert that did not testify at trial?

5. Did the trial court err in awarding the Elchlepps $25,000 in attorney's fees pursuant to the real estate sale contract?

## III. Analysis

### A. Standard of Review

Our standard of review of a jury verdict is well settled, as recently restated by our Supreme Court:

> The applicable standard of review is set out in Tennessee Rule of Appellate Procedure 13(d), which provides, "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict."

> * * *

> When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all countervailing evidence. Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, the jury's findings must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury."

*Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn.2006) (internal citations and brackets omitted). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn.2007); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26,

35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

## B. Applicable Standard of Proof in Fraudulent Misrepresentation Action

 The trial court instructed the jury to apply the preponderance of the evidence standard of proof, the standard ordinarily applied in a civil lawsuit. *Teter v. Republic Parking System, Inc.,* 181 S.W.3d 330, 341 (Tenn.2005). The Hatfields argue that this instruction was erroneous and that the trial court should have instructed the jury to apply the clear and convincing evidence standard to the Elchlepps' claims of fraud and misrepresentation.[1] We disagree, because Tennessee case law supports the conclusion that the preponderance standard applies in a case where the plaintiff does not seek rescission or reformation of a written instrument due to fraud, as in the present case.

In the recent case of *Noblin v. Christiansen,* No. M2005–01316–COA–R3–CV, 2007 WL 1574273, at *11 (Tenn. Ct.App. M.S., filed May 30, 2007), the court addressed this question and stated the rule as follows:

> When a claimant is alleging the tort of fraud in an action for damages, the claimant is obligated to meet a preponderance of the evidence burden of proof. *Jarmakowicz v. Suddarth,* No. M1998–00920–COA–R3–CV, 2001 WL 196982, at *10 (Tenn.Ct.App. Feb.28, 2001) (No Tenn. R.App. P. 11 application filed) citing *Gentry v. Hill* (no docket no.) 1985 Tenn.App. LEXIS 3180, at *6–11 (Tenn. Ct.App. Sept. 25, 1985) (No Tenn. R.App. P. 11 application filed). When one is trying to set aside or reform a written instrument then fraud must be

proven by clear and convincing evidence. *Jarmakowicz,* 2001 WL 196982, at *10. *See Estate of Acuff v. O'Linger,* 56 S.W.3d 527, 530–31 (Tenn.Ct.App.2001)

*Id.* A couple of years before *Noblin,* this court similarly stated that

> [t]he clear and convincing standard of proof is appropriate to those cases where a party seeks the reform or rescission of a written instrument due to fraudulent inducement. But in all other cases involving claims of fraud, the standard of proof is preponderance of evidence.

*Capital Management Partners v. Eggleston,* No. W2004–01207–COA–R3–CV, 2005 WL 1606066, at *8 (Tenn. Ct.App. W.S., filed July 7, 2005); *accord Estate of Acuff v. O'Linger,* 56 S.W.3d 527, 530–31 (Tenn. Ct.App.2001). Finally, the Tennessee Supreme Court has recently recognized the above-cited rule, stating as follows:

> Generally, in civil cases, facts are proved by a mere preponderance of the evidence. *Endowment Rank of Order of K.P. v. Steele,* [107 Tenn. 1] 63 S.W. 1126, 1128 (1901); *Burchett v. Stephens,* 794 S.W.2d 745, 748 (Tenn.Ct.App.1990). The preponderance of the evidence standard requires that the truth of the facts asserted be more probable than not, whereas the clear and convincing evidence standard requires that the truth be highly probable.
>
> \* \* \*
>
> The higher standard of clear and convincing evidence is used to promote important public policy and preserve prior judicial orders. *Estate of Acuff,* 56 S.W.3d at 536.... The courts have also imposed a clear and convincing standard *in circumstances involving extraordi-*

---

1. The Tennessee Supreme Court has noted that the terms "intentional misrepresentation," "fraudulent misrepresentation" and

"fraud" are synonymous. *Concrete Spaces, Inc. v. Sender,* 2 S.W.3d 901, 904(n.1) (Tenn. 1999).

*nary remedies. See Estate of Acuff,* 56 S.W.3d at 536 (setting aside deed on grounds of fraud); *Hodges [v. S.C. Toof & Co.],* 833 S.W.2d [896] at 901 [Tenn. 1992] (award of punitive damages); *Pierce v. Flynn,* 656 S.W.2d 42, 46 (Tenn.Ct.App.1983) (reformation of a contract).

*Teter,* 181 S.W.3d at 341 (emphasis added).

In the present case, the Elchlepps are seeking damages only, not to reform or rescind a written instrument due to the alleged fraud or intentional misrepresentation of the Hatfields. Therefore, the trial court correctly instructed the jury to apply the ordinary preponderance of the evidence standard of proof in this case.

### C. *Appropriate Measure of Damages*

■ The Hatfields argue that the trial court erred in instructing the jury to limit its damage considerations to the termite damage to the house and that the value of the land was not to be considered in assessing damages. The trial court instructed the jury on damages as follows:

> Damages, benefit of the bargain rule. If you find that the plaintiff is entitled to a verdict against the defendants, you must then award damages in an amount that will reasonably compensate the plaintiffs for all the loss suffered by the plaintiffs that was legally caused by the misrepresentation upon which you base your finding of liability. You will award the plaintiffs the benefit of the bargain. Benefit of the bargain is the difference between the value of what the plaintiff would have received if the misrepresentations had been true, and the actual value of what the plaintiff received. . . . Please limit your considerations specifically to termite damage, value of the land is not a consideration in determining the amount of damages.

> \* \* \*

> Damage to real property. *The measure of damage to real property is the lesser of the following amounts. Number one, the reasonable cost of repairing the damage to the property; or number two, the difference between the fair market value of the premises immediately prior to and immediately after the damages.* Please also consider the two following issues—or note the two following issues concerning damages to real property. Limit your damage consideration specifically to termite damage and the value of the land is not a consideration in determining the amount of damages in this case.

(Emphasis added). The italicized portion above is the exact jury instruction requested by the Hatfields. We find no error in the trial court's jury instruction.

In the case of *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228 (Tenn.Ct. App.1976), the court considered the appropriate measure of damages in an action involving alleged fraudulent misrepresentation in a real estate sales transaction, and stated as follows:

> In an action for damages caused by a fraudulent misrepresentation, the proper measure of the plaintiffs' general damages is the benefit of the bargain rule. *Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966); *Shwab v. Walters, supra* [147 Tenn. 638, 251 S.W. 42 (1923)]; *Augur v. Smith,* 90 Tenn. 729, 18 S.W. 398 (1891) and *Hogg v. Cardwell,* 36 Tenn. 151 (1856). This measure of damages allows the plaintiff to recover the difference between the actual value of the property he received *at the time of the making of the contract* and the value that the property would have possessed if [the defendant's] representations had been true. 37 Am. Jur.2d, *Fraud and Deceit,* § 353, p. 473

(1968); *see Shwab v. Walters, supra;* 13 A.L.R.3d, *Damages–Fraudulent Representation,* § 3, p. 885 (1967). The application of this measure of damages compels the defendant to make good on the false representations. The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction. 37 Am. Jur.2d, § 365, p. 495 (1968); 13 A.L.R.3d, §§ 2–3, pp. 882–902 (1967); McCormick on Damages, § 122, pp. 456–457 (1935).

*Haynes,* 546 S.W.2d at 233 (emphasis in original); accord *Anderson v. Warren,* No. W2000–02649–COA–R3–CV, 2001 WL 1683810, at *5 (Tenn.Ct.App. W.S., filed Dec. 12, 2001); *Perry v. Flatford,* No. 03A01–9609–CH–00305, 1997 WL 44438, at *3 (Tenn.Ct.App. E.S., filed Feb. 5, 1997); *Edwards v. Bruce,* No. 01A01–9510–CH–00458, 1996 WL 383294, at *12 (Tenn.Ct. App. W.S., filed July 10, 1996).

■ The Hatfields argue that the trial court erred in excluding the testimony of their proffered real estate appraiser regarding his evaluation of the entire real estate parcel at the time of the trial. In their appellate brief, the Hatfields state that "the essential testimony of [their] real estate expert was to the effect that the parcel of real estate property was more valuable at the time of the trial than when it was purchased, whether or not it had a structure on it, or whether or not there was termite infestation damage to the structure." From this argument, it appears that the Hatfields were attempting to offset the amount of damage from the house's termite infestation by the amount of appreciation in value of the real estate from the time of the closing until the time of trial. The trial court was correct in rejecting this argument because the appreciation of the underlying land over time is entirely irrelevant to the calculation of the damages the Elchlepps suffered as a result of the misrepresentations concerning the termite damage to the house. The Elchlepps did not allege damage to the underlying land; their action only alleges damages to the house.

■ Further, as the court in *Haynes* noted, "the measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction," not as of the time of trial. *Haynes,* 546 S.W.2d at 233. Leslie Sellers, a certified real estate appraiser, testified that he evaluated the property at the Elchlepps' request on November 4, 2002. Mr. Sellers appraised the property at $280,000, assuming no termite damage, broken down as follows: $200,000 for the lot; $5,000 for site improvements, including well, septic tank, and driveway; and $75,000 for the house. Mr. Sellers stated that based on the structural engineer's report that he reviewed, the house was infested with termites such that "the cost of renovating the property would be in excess of what it would be valued at if it was corrected." With the existing termite damage, Mr. Sellers testified that the house was worthless and the value of the real property and improvements remaining would be $205,000. We hold that the trial court did not err in instructing the jury on the proper measure of damages in this case.

### D. *Material Evidence Supporting Jury Verdict*

■ Although the Hatfields' brief contains the assertion that "there was no material evidence to support the jury's specific findings of either intentional or negligent misrepresentation and concealment by the Defendants, or as to the allocation of comparative fault," the argument section of their brief on this issue is directed to the proposition that "the pre-

ponderance of the trial evidence did not support the jury verdict." Our review of a duly-approved jury verdict does not permit us to reweigh the evidence, nor to determine where the preponderance of the evidence lies. *Whaley v. Perkins,* 197 S.W.3d 665, 671 (Tenn.2006). Our review of the record under the appropriate standard finds an abundance of material evidence supporting the jury verdict.

The Tennessee Supreme Court has restated the elements of a common law action for fraud as follows:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his injury.

*Black v. Black,* 166 S.W.3d 699, 705 (Tenn. 2005) (quoting *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66–67 (Tenn. 2001)). The Elchlepps provided material evidence from which the jury could have reasonably concluded that all the elements of a fraud or misrepresentation claim were met.

Simply stated, the central factual issue in this case was the credibility of the Hatfields' assertion that they were unaware that the house was infested with termites. There is an abundance of evidence supporting the conclusion, obviously drawn by the jury, that the Hatfields were not believable on this point. For example, the affidavit of structural engineer Paul Tucker, who testified similarly to the following attestations at trial, stated:

> I made [a] structural integrity inspection on December 29, 2005.... I observed significant evidence of termite damage throughout the structure.
>
> There were several areas of significant damage to the house, which had been covered with siding or metal.
>
> I observed termite damage in the attic space of the house.
>
> The Elchlepps showed me portions of original flooring which they had removed.
>
> That from the condition of the floors and walls of the house, the termite infestation was known or should have been known by the Hatfields, who sold the property to the Elchlepps.
>
> There were several layers of carpet and sub-flooring indicating that the prior homeowner had endeavored to cover up damage in several areas of the house using different materials, creating layers of flooring.
>
> It is apparent that the prior homeowner covered damaged, termite infested siding with sheet metal and siding to conceal the damage.

The testimony of Mr. Elchlepp, including his testimony that Mr. Hatfield assured him that the termite damage discovered before closing was a limited and localized problem, also supports the jury verdict. It is undisputed that Mr. Hatfield built the house and made the improvements to it, and that the Hatfields were the only people ever to own and occupy the house. We find that there is ample material evidence supporting the jury verdict in the case, and the Hatfields' argument to the contrary is without merit.

### E. "Missing Witness" Rule

■ The Hatfields next argue that the trial court erred in instructing the jury on the "missing witness" rule and in allowing the Elchlepps' attorney to argue that it should be applied to an unidentified person

who helped Mr. Hatfield install vinyl siding over the original wood siding of the house. The trial court charged the jury on the missing witness rule as follows:

Under certain circumstances, you may consider the absence of a witness. You may conclude that the testimony of the witness would be adverse to that party who failed to offer it only if you find all of the following elements. Number one, that it was within the power of the party to produce a witness on an issue in this case but the party has failed to produce the witness. Number two, the witness was uniquely under the control of the party and could have been produced by the exercise of reasonable diligence. And number three, the witness was not equally available to an adverse party. Number four, the witness's testimony would not be merely cumulative. And number five, a reasonable person under the same or similar circumstances would have produced the witness if the testimony would be favorable. And number six, no reasonable excuse for the failure has been shown. You must find all of these elements before you can conclude that the testimony of a witness would be adverse to a party.

The Hatfields do not argue that the jury instruction was an incorrect statement of the law regarding the missing witness rule. *See State v. Francis,* 669 S.W.2d 85, 88–89 (Tenn.1984); *Dickey v. McCord,* 63 S.W.3d 714, 721–22 (Tenn.Ct.App.2001). Mr. Hatfield testified in his deposition that he hired "a boy in Jacksboro" to install vinyl siding over the original wood siding. Neither Mr. Hatfield nor Mrs. Hatfield could remember the person's name. Mr. Hatfield testified at trial that they tried to find the documentation of the name and address of the person who installed the vinyl siding, but couldn't find it. The trial court ruled that it was a question of fact for the jury to determine whether the missing witness rule should be applied to infer that the testimony of the vinyl siding installer would have been adverse to the Hatfields if he had been called as a witness by them. The trial court allowed the Elchlepps' attorney to argue that the Hatfields actually were able to or should have been able to find and call the installer as a witness, and that the reasonable inference would be that the installer would have testified adversely to the Hatfields on the issue of whether there was visible termite damage to the wood siding of the house.

The trial court refused to allow the attorney for White Termite and Pest Control Company to argue that the missing witness rule should be applied to one of the Elchlepps' experts, an entomologist and owner of a pest control company who had previously inspected the house and given a deposition before trial, but was not called as a witness by the Elchlepps. After the Elchlepps did not call this termite expert, the attorney for White Termite and Pest Control Company unsuccessfully attempted to have him subpoenaed in the middle of the trial. The trial court applied Tenn. R. Civ. P. 32.01(3) and Tenn. R. Evid. 804(a) in holding that White Termite and Pest Control Company could not read portions of the termite expert's deposition into evidence, and the Hatfields have not appealed this ruling. Regarding the missing witness rule, the trial court held that White Termite and Pest Control did not establish that the witness was not equally available to all the parties involved, stating that "I think the witness is equally available to you. You've known all along who that person is."

We are of the opinion that the rulings regarding the missing witness rule were within the trial court's discretion, and not an abuse of that discretion. In the alternative, if the rulings were in error, they

were harmless error when considered in the overall context of the six-day trial. The Hatfields state in their brief that "the asserted errors of the Trial Court in allowing or disallowing witness testimony, if taken alone and out of context of the entire trial, would probably be harmless," but that "taken together with the other asserted errors, it is respectfully submitted that such evidentiary errors constitute reversible error of the Trial Court." Although we are not convinced that the trial court's rulings were erroneous, there is definitely no showing that they so likely affected the outcome of the trial that they constituted reversible error, in light of the voluminous other evidence presented, and in light of the fact that we have disagreed with the Hatfields' other assignments of error as previously discussed.

### F. Award of Attorney's Fees

 Finally, the Hatfields contend that the trial court erred in awarding the Elchlepps attorney's fees in the amount of $25,000 pursuant to the contract for sale of real estate. The real estate sales contract provided that "[i]n any action, proceeding or arbitration arising out of this agreement, the prevailing party shall be entitled to reasonable attorney fees and costs." Therefore, the only issue on appeal is the reasonableness of the amount of fees awarded. "The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn.2005) (quoting *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn.1995)). The Elchlepps' attorney submitted an affidavit documenting the number of hours spent on the case and his customary hourly rate of $375, resulting in a fee totaling approximately $62,550. In determining a reasonable fee amount, the trial court should look to the guidelines outlined in *Connors v. Connors,* 594 S.W.2d 672, 676 (Tenn.1980) and to the factors listed in Tennessee Supreme Court Rule 8, RPC 1.5. *Kline v. Eyrich,* 69 S.W.3d 197, 209 (Tenn.2002).

The *Kline* Court observed that "the *Connors* guidelines include the time devoted to performing the legal service; the time limitations imposed by the circumstances; the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; and the experience, reputation, and ability of the lawyer performing the legal service." *Kline,* 69 S.W.3d at 209, n. 11. Tennessee Supreme Court Rule 8, RPC 1.5 provides for similar, though not identical, factors as follows:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

.

(10) whether the fee agreement is in writing.

Tennessee Supreme Court Rule 8, RPC 1.5(a).

Applying these factors to the present case, we do not find that the trial court abused its discretion in awarding attorney's fees to the Elchlepps in the amount of $25,000. As we have noted, this case involved a lengthy jury trial and the attendant substantial preparation was required. The fee awarded was reasonable under the circumstances presented here.

## IV. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed in its entirety. Costs on appeal are assessed to the Appellants, Emol Hatfield and Wilma Hatfield.