# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 14, 2010 Session

## IN RE: ESTATE OF JAMES A. HAMILTON a/k/a
## JAMES ROBERT HAMILTON

**Appeal from the Chancery Court for Marion County**
**No. 7299      Jeffrey F. Stewart, Chancellor**

---

**No. M2009-01882-COA-R3-CV - Filed February 14, 2011**

---

A woman who failed to have her paternity determined while her putative father was living filed a complaint seeking to establish her right to inherit a part of his estate. Tennessee Code Annotated §31-2-105 requires paternity to be established by clear and convincing evidence if paternity is sought to be established after the putative father's death. Prior to the trial, the woman moved the chancery court to order the deceased's family to provide her with DNA samples in an effort to prove the deceased was her father. The trial court denied this motion, finding the rules of civil procedure do not require nonparties to provide DNA samples. Following a bench trial, the court concluded the woman failed to prove by clear and convincing evidence that the deceased was her father. The woman appealed. We affirm the trial court in all respects because, first, nothing in the Rules of Civil Procedure requires the deceased's family members to provide DNA samples to assist the woman in proving she was the deceased's daughter. Second, the positive and negative evidence rule does not apply to the testimony in this case because there was no conflicting testimony by eyewitnesses to the woman's conception. Third, the missing evidence and missing witness rule applies to jury trials, whereas this trial was a bench trial, and there was no evidence that the purportedly missing evidence or missing witnesses were under the estate's control.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

H. Graham Swafford, Jr., Jasper, Tennessee, for the appellant, Lora Davis.

Russell Anne Swafford, Dunlap, Tennessee, for the appellee, Alice Hamilton Davis, in her

capacity as Administratrix of the Estate of James A. Hamilton.

**OPINION**

On April 29, 2009, Lora Davis filed a Complaint in the Chancery Court of Marion County to establish her right to inherit a portion of the estate of James Albert Hamilton, who passed away on November 26, 2007, leaving no will. Alice Hamilton Davis, who was Mr. Hamilton's sister and is the administratrix of Mr. Hamilton's estate, was named as the defendant.[1] Lora claimed Mr. Hamilton was her father, and that under the laws of intestacy she was entitled to share his estate with the children of Mr. Hamilton's other daughter, who predeceased Mr. Hamilton.

Lora was not legitimated during Mr. Hamilton's lifetime. Prior to trial, Lora filed a motion to compel Mr. Hamilton's family members to provide a DNA sample in an effort to prove she was Mr. Hamilton's daughter. The trial court denied this motion on the basis that no authority compels nonparties to provide DNA samples.

### I. TESTIMONY AT TRIAL

This case was tried before the Chancery Court without a jury on June 15, 2009. Lora testified that Mr. Hamilton treated her as his daughter from the time she was five or six years old until the time he died. The witnesses Lora presented included her mother, her mother's sister, her current husband, her ex-husband, and her mother's brother.

All these witnesses provided consistent testimony that Mr. Hamilton treated Lora as his daughter and that Lora always referred to Mr. Hamilton as "Daddy." They testified that Mr. Hamilton spent time with Lora when he was able to see her, that Lora resembled Mr. Hamilton, and that Mr. Hamilton treated Lora as his daughter from the time she was a young girl. Lora's mother testified that she was living with Mr. Hamilton and his sister's family when she became pregnant, and that she lived with Mr. Hamilton and his sister's family for fifteen months. Lora's mother testified she was certain Mr. Hamilton was Lora's father and that there was no other man who could have been Lora's father when she became pregnant.

Witnesses for the defense included the Administratrix, her husband, their daughter, and their son-in-law. They all testified that they did not see much of Lora while Mr. Hamilton was living and did not know whether or not Lora was Mr. Hamilton's daughter.

---

[1]Because the plaintiff and defendant share the same last name, we will refer to the plaintiff as Lora and the defendant as either Alice or the Administratrix.

The Administratrix testified that the first time she met Lora was at the funeral home when Mr. Hamilton's daughter Lacey passed away. She also testified Lora's mother brought photos of Lora to her house when Lora was a child and told Alice that Lora was Mr. Hamilton's daughter. When asked whether any of her brothers other than Mr. Hamilton ever referred to Lora as Mr. Hamilton's daughter, the Administratrix replied, "Well, they might have, you know." Alice also testified that when Mr. Hamilton died, Lora was not initially listed in the program for Mr. Hamilton's funeral service. Alice explained that Lora was upset she was not listed in the program, and so Alice had the program changed to include Lora as Mr. Hamilton's daughter. With regard to how long Lora's mother lived with Mr. Hamilton and Alice's family when Lora's mother and Mr. Hamilton first met, Alice testified that Lora's mother lived with her family for a month or two, but she did not think Lora's mother lived with her for fifteen months.

## II. TRIAL COURT'S RULING

Following a bench trial, the trial court held Lora had failed to prove by clear and convincing evidence that Mr. Hamilton was her father, stating:

> [T]he burden of proof is to prove by clear and convincing evidence her case that Buck Hamilton was her father. That means that there could no serious or substantial doubt concerning the correctness of the conclusions drawn from the evidence, or that the proof produces in the fact-finder's mind that firm belief or conviction with regard to the truth of a claim sought to be established or that Black's Law Dictionary that no reasonable doubt in the mind of the trier of fact concerning the matters at issue. While I think that there was evidence that was presented by the plaintiff that could be in her favor, I don't think it would be of the nature that would be clear and convincing evidence, and so I find that the plaintiff has not carried her burden of proof in this case, and would find then for the estate.

Lora's counsel duly filed a Notice of Appeal with this court and claimed the trial court erred (1) in denying Lora's motion to require Mr. Hamilton's family members to submit to a DNA test to establish that Mr. Hamilton was Lora's father; (2) in failing to apply the negative evidence rule to the testimony presented at trial; and (3) in applying the missing witness or withheld evidence rule. We will address each of these issues in turn.

### III. PROOF OF PATERNITY BY CLEAR AND CONVINCING EVIDENCE

Lora did not establish Mr. Hamilton's paternity before he passed away. Therefore, the statute governing paternity for purposes of intestate succession requires Lora to prove Mr. Hamilton was her father by clear and convincing evidence. The applicable portion of the statute governing this issue provides:

> (a) If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:
>
> . . . . .
>
>> (2) . . . a person born out of wedlock is a child of the mother. That person is also a child of the father, if:
>>
>> . . . . .
>>
>>> (B) The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof . . . .

Tenn. Code Ann. §31-2-105.

The Tennessee Supreme Court examined the meaning of the "clear and convincing" standard in another paternity case. The Court wrote:

> The "clear and convincing" standard falls somewhere between the "preponderance of the evidence" in civil cases and the "beyond a reasonable doubt" in criminal proceedings. To be "clear and convincing," the evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."

*In re Estate of Walton v. Young*, 950 S.W.2d 956, 960 ((Tenn. 1997) (quoting *Fruge v. Doe*, 952 S.W.2d 408, 412 n.2 (Tenn. 1997), itself citing *Hobson v. Eaton*, 399 F.2d 781, 784 n.2 (6th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969)). As stated, Lora was required to meet a higher standard of proof than is required to show that something happened more likely than not, but not so high that there can be no reasonable doubt that an event occurred.

Lora does not argue on appeal that the trial court erred in ruling she had not proved her case by clear and convincing evidence. Therefore, we will not address the issue of whether the trial court's ultimate holding is supported by the evidence.

## IV. DNA Test

Lora relies on Tennessee Rules of Civil Procedure 34.01 and 34.03 to support her argument that Mr. Hamilton's family members should have been required to provide DNA samples. Rule 34.01 addresses requests made by one party to another party to produce documents, or to inspect and copy, test, or sample tangible things in the possession or control of the party upon whom the request is served, or to permit entry upon land or other property in the possession or control of the party upon whom the request is served for the purpose of inspecting and measuring, surveying, photographing, testing, or sampling the property or designated object or operation. Rule 34.01, by its terms, does not apply to nonparties.

Although Alice Davis is the named defendant and was the sister of Mr. Hamilton, the putative father, she is being sued solely in her capacity as administratrix of the estate. It is not clear from the record from which family members Lora was seeking DNA. Lora's counsel did not argue before this Court that she should have been entitled to obtain Alice's DNA separate and apart from Mr. Hamilton's other family members. However, even if Lora was seeking a DNA sample from Alice, Lora's attorney failed to cite any case law or other authority that Rule 34 authorizes a third party to take a sample from Alice's bodily tissues.

The record does not show that Lora ever filed a discovery request under Rule 34 asking Alice to submit to a DNA test. The 2009 Advisory Commission Comments to Rule 34 explain that "issues of burden and intrusiveness raised by requests to test or sample can be addressed under Rules 26.02 and 26.03." In the absence of evidence in the record to show Lora sought this discovery through the Rules of Civil Procedure or filed a motion to compel this discovery, Rule 34.01 does not help Lora's argument.

Lora also relies on Rule 34.03 to argue Mr. Hamilton's family should have been required to provide DNA samples. While Lora is correct that Rule 34.03 applies to nonparties, the rule addresses "documents and tangible things" nonparties may have in their possession, as well as permitting an "inspection." As the Advisory Commission Comments make clear, "This Rule provides a method by which a party may obtain access to relevant material objects under the control of another party."

Lora provides no authority to support her argument that an "inspection" as used in Rule 34.03 includes a DNA sample taken from a nonparty's body. In any event, to the extent Lora was seeking DNA samples from Mr. Hamilton's family other than Alice, Lora has not made any showing that those other family members were under Alice's control. Therefore, Rule 34.03 does not further Lora's cause any more than Rule 34.01 does.

### V. POSITIVE AND NEGATIVE EVIDENCE RULE

Lora next argues the trial court erred in failing to apply the positive and negative evidence rule to conclude Lora failed to prove by clear and convincing evidence that Mr. Hamilton was her father. Positive evidence includes a witness's testimony that he or she saw or heard a particular event. Negative evidence includes a witness's testimony that if a particular event occurred, he or she did not see or hear it. If a witness was in a position to see or hear a particular event and testifies that the event did not occur, that evidence would be positive evidence that the event in question did not occur. 11 TENNESSEE JURISPRUDENCE *Evidence* §220 (2004). Positive testimony is generally entitled to more weight than negative testimony when the witnesses are equally credible. *Id.*

The Tennessee Court of Criminal Appeals described the difference between positive and negative testimony in *State v. Smith*:

> Positive or affirmative testimony is that given by a witness who, having been present at the time in question, testifies that an alleged fact or event did exist or occur, or who, having been not only present but also attentive, testifies not merely that he did not see or hear or otherwise observe the alleged fact or event, but that it did not exist or occur. Negative testimony in the strict sense is that given by a witness who, having been present, testifies, not positively that an alleged fact or event did not exist or occur, but merely that he did not see or hear or otherwise observe its existence or occurrence. If a witness, having been present, testifies that he was attentive but did not see or hear or otherwise observe the alleged fact or event, his testimony, while commonly termed as negative, is not of a purely negative character; and where a witness describes a fact or event observed by him, and an opposing witness observes and describes the same fact or event differently, the testimony of both is equally positive.

626 S.W.2d 283, 285-86 (Tenn. Cr. App. 1981).

This rule has been discussed and applied in numerous cases. *See, e.g. Tenn. Cent. Ry. Co. v. Page*, 282 S.W. 376, 377 (Tenn. 1926) (damages action resulting from collision between train and car); *State v. Blair*, 634 S.W.2d 627, 631 (Tenn. Cr. App. 1982) (sodomy case); *Atkins v. Smith*, 9 Tenn. App. 212, 216 (Tenn. Ct. App. 1928) (negligence action where child was injured in the street); *Watts v. Wilkerson*, No. 03A01-9310-CV-00350, 1994 WL 85951, at *2 (Tenn. Ct. App. 1994) (wrongful death action). This rule has been criticized as causing more confusion than clarification when a trial judge instructs a jury to disregard negative testimony when positive testimony conflicts with the negative testimony.

*See State v. Blair*, 634 S.W.2d at 634 ("Because the negative evidence rule promotes more confusion than clarity, we think the better practice would be to omit the instruction altogether."); *Watts v. Wilkerson*, 1994 WL 85951, at *2 (negative evidence rule out of favor).

Lora's counsel argued that the testimony provided by Alice's witnesses should have been treated as negative testimony because these witnesses testified they did not know whether or not Mr. Hamilton was Lora's father, whereas the testimony by Lora's witnesses should have been treated as positive testimony and therefore given greater weight by the chancellor because they testified they believed Mr. Hamilton was Lora's father. The belief of the witnesses does not rise to the level of positive evidence. The trial court appropriately declined to apply the positive and negative evidence rule.

## VI. MISSING WITNESS OR EVIDENCE RULE

Lora's final argument is that the trial court misapplied the missing witness or evidence rule in concluding Lora failed to prove by clear and convincing evidence that Mr. Hamilton was her father. With regard to missing witnesses, Lora's counsel referred to "family members" who were unavailable at trial, but did not identify these individuals. With regard to missing evidence, he argued that "a non intrusive DNA test to determine paternity one way or the other amounts to withheld evidence."

The missing witness or evidence rule is generally an instruction a trial judge gives to a jury allowing them to draw a negative inference against a party when that party does not call a witness or present evidence that under reasonable circumstances the party would have introduced if the testimony or evidence would have assisted that party's case. *Nichols v. Nichols*, 856 S.W.2d 397, 402 (Tenn. 1993); 11 TENNESSEE JURISPRUDENCE *Evidence* §27 (2004).

We recently reviewed the missing witness rule in *Elchlepp v. Hatfield*, 294 S.W.3d 146 (Tenn. Ct. App. 2008), and we reviewed the missing evidence rule in *Richardson v. Miller*, 44 S.W.3d 1 (Tenn. Ct. App. 2000). In both cases we recognized that a trial court may instruct a jury that they may consider the absence of a witness or evidence to conclude the witness's testimony or missing evidence would have been adverse to the party who failed to introduce it only under certain circumstances. These circumstances include: (1) the party that failed to produce the witness or evidence had it within their power to produce such witness or evidence; (2) the missing witness or evidence was under the party's control; (3) the witness or evidence was not equally available to the other party; (4) the witness's testimony or evidence would not simply be cumulative; (5) a reasonable person in the party's position would have produced the witness or evidence if such witness or evidence would

have been helpful; and (6) the party has not given a reasonable excuse for failing to present the witness or evidence. *Elchepp v. Hatfield*, 294 S.W.3d at 154; *Richardson v. Miller*, 44 S.W.3d at 28; *see generally* 11 TENNESSEE JURISPRUDENCE *Evidence* §§27-28 (2004) (general discussion of missing evidence and missing witness rules).

While we have already noted Lora's failure to specify particular witnesses who should have testified at trial, we also note that Lora has not shown how any missing witnesses were under the estate's control and unavailable to Lora to subpoena to testify at trial. Moreover, she has not shown that DNA evidence from family members other than Alice was under the estate's control, as she must before the missing evidence rule is even arguably applicable.

In any event, the missing witness and missing evidence rule applies to jury trials where the trial judge instructs the jury how to interpret the evidence or lack thereof, and Lora does not explain how this rule can apply to a bench-tried case such as this. For all of these reasons, the missing witness or missing evidence rule does not come into play in this case.

The trial court is affirmed. Costs of this appeal are taxed to the appellant, Lora Davis, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE