IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 18, 2019 Session

## REGINA SMITH ET AL. v. BENIHANA NATIONAL CORP.

**Appeal from the Circuit Court for Shelby County**
**No. CT-001573-14  Gina C. Higgins, Judge**

_____

### No. W2018-00992-COA-R3-CV
_____

In 2010, Decedent became ill while dining at the Benihana restaurant in Memphis, Tennessee; despite being transported to the hospital, Decedent quickly died. Surviving relatives of Decedent thereafter filed suit against the restaurant alleging, inter alia, that the restaurant negligently served Decedent seafood or shellfish in spite of a known allergy. After several years of pretrial disputes, the case eventually proceeded to a jury trial. The jury determined that the restaurant was not liable for the death of Decedent and awarded the plaintiffs no damages. The plaintiffs filed no post-trial motions, but filed a timely notice of appeal to this Court. Discerning no error in the jury's verdict and concluding that several of the issues raised on appeal are waived, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and CARMA DENNIS MCGEE, JJ., joined.

Terrell Lee Tooten, Memphis, Tennessee, for the appellants, Regina Smith, and Lekeitha Moore.

Lauren L. Holloway, Molly A. Glover, and William David Irvine, Jr., Memphis, Tennessee, for the appellee, Benihana National Corp.

### OPINION

#### BACKGROUND

At the outset we note that the factual and procedural history of the present case can only be described as tortuous. This matter arose after the death of Elliott Smith

("Decedent") on or about December 4, 2010, after Decedent dined at the Benihana[1] restaurant located in Memphis, Tennessee. As a result, Regina Smith and Lekeitha Moore,[2] on behalf of Decedent's minor children (collectively, "Appellants") filed suit against Benihana of Tokyo, Inc. on November 14, 2011. The basis of this suit was that Decedent suffered from an allergy to all seafood and allegedly passed away as a result of ingesting seafood or seafood particles while dining at the Memphis Benihana on the evening in question. The initial case was voluntarily dismissed and timely refiled in April of 2014 in the Shelby County Circuit Court ("trial court"). In the refiled complaint, Appellants alleged causes of action for negligence, gross negligence, loss of consortium, premises liability, res ipsa loquitur, intentional infliction of emotional distress, and negligent infliction of emotional distress. Essentially, this complaint averred that Benihana of Tokyo was responsible for Decedent's death by failing to properly prepare Decedent's meal without seafood in it, and by failing to protect Decedent "against ingestion and/or exposure to allergens" that were present in the restaurant and harmful to Decedent. Benihana of Tokyo moved to dismiss the complaint, arguing that it did not operate or control the Memphis Benihana.

Appellants thereafter filed an amended complaint on July 21, 2014, naming Benihana, Inc.[3] and Benihana National Corp. ("Appellee") as defendants. The amended complaint asserted largely the same allegations regarding the death of Decedent. The Appellee moved to dismiss the amended complaint alleging that service of process was not appropriately carried out. In the meantime, Appellants filed a motion for partial summary judgment on December 7, 2016, wherein they asserted that Appellee caused Decedent's death "by failing to ensure that his meal was not contaminated with seafood" and by failing to ensure that Decedent "was not exposed to a dangerous amount of smoke which contained seafood elements." Appellants essentially urged that Appellee was negligent in either allowing seafood to contaminate Decedent's meal, or by failing to protect Decedent from inhaling aerosolized seafood particles while dining.[4] Appellants attached to this motion the affidavit of Dr. Donald Accetta, who opined that Decedent had died from a massive, deadly "reaction called anaphylaxis due to contamination of the food that he was eating at the Benihana restaurant." Eventually, the trial court held a hearing on the various pending motions and concluded that the amended complaint

---

[1] Benihana restaurants are ones in which patrons dine at "hibachi tables" such that the patrons may watch the preparation of their food directly in front of them on a large grill. The menu of the Benihana restaurant at issue here is contained in the record and reflects that many of the available items contain seafood and/or shellfish.

[2] Regina Smith is the mother of Decedent, and Lekeitha Moore is the biological mother of Decedent's two children, both of whom were minors at the time of the filing of the original complaint.

[3] Benihana, Inc. was eventually dismissed from this case entirely on the basis that it was not a proper party to the action. Benihana National Corp. was the only defendant at trial and is the only defendant participating in the present appeal.

[4] Importantly, Appellants made an allegation in their motion for partial summary judgment that was not present in the operative complaint; specifically, Appellants asserted that Appellee was also liable for Decedent's death on the basis of products liability.

should be dismissed with prejudice.[5] An order was entered April 4, 2017, dismissing Appellants' claims entirely.

Thereafter, Appellants filed a motion to alter or amend the April 4, 2017 order dismissing their complaint, arguing that counsel for Appellants had not been made aware that the motion to dismiss was set for hearing the day it was heard. Further, they alleged that the trial court failed to appropriately state the basis for the dismissal or otherwise specify the facts and law relied upon in deciding to dismiss the case.

On September 1, 2017, the trial court entered several orders. First, the trial court set aside its April 4, 2017 order dismissing the case with prejudice; the trial court based this decision on "the need to review all available material information, facts, and for the Court to consider the arguments of counsel in relation to the interpretation of the facts in this case." After setting the previous order aside, the trial court reconsidered Appellee's motion to dismiss, and determined that certain claims should indeed be dismissed. Specifically, the trial court dismissed the loss of consortium claims of Regina Smith and Lekeitha Moore,[6] as well as the causes of action based upon premises liability and res ipsa loquitur. The trial court concluded that the action would thus "proceed solely under the Wrongful Death statute." Accordingly, Appellee's motion to dismiss was denied in part and granted in part, and the case proceeded. Trial was set for May 21, 2018.

At this time, Appellants' motion for partial summary judgment remained pending. Appellee responded to this motion by asserting that disputed issues of material fact remained surrounding the cause of Decedent's death. In support, Appellee produced Decedent's death certificate that indicated that Decedent died from severe bronchial asthma, rather than from an allergic reaction to seafood or seafood particles. However, Appellee later filed its own motion for summary judgment in April of 2018, wherein it sought dismissal of all claims on the basis that no genuine issues of material fact remained. Specifically, Appellee argued that it could not be liable for negligently serving Decedent seafood because Decedent was aware of the danger of seafood exposure at Benihana, as Decedent undisputedly dined at Benihana on a regular basis. With regard to Appellants' argument that Decedent may have died from inhaling aerosolized seafood particles while dining at Benihana, Appellee asserted that it had no duty to protect Decedent from "steam emanating off the grill at Benihana" because injury from such steam would have been entirely unforeseeable by the Appellee. Essentially, Appellee asserted that Appellants could not satisfy their burden of proof as to any of the claims at issue.

---

[5] The trial court issued the oral ruling granting the Appellee's motion to dismiss on March 31, 2017, at a hearing which the Appellants' counsel did not attend.

[6] This order stated that this ruling did not affect any loss of consortium claims by Decedent's minor children.

- 3 -

Protracted litigation continued, including various discovery disputes between the parties. Finally, on May 4, 2018, the trial court entered an order denying Appellants' motion for partial summary judgment, noting that there were significant issues of material fact outstanding and that "causation for the death [of Decedent] was a huge issue in terms of whether the cause of death was due to an allergy versus asthma." The trial court eventually held a hearing on Appellee's motion for summary judgment on May 11, 2018; however, the trial court did not rule on the motion that day. Rather, the trial court revisited Appellee's motion at another hearing on May 18, 2018, at which time the trial court again did not expressly rule on Appellee's motion for summary judgment. The trial court did, however, state that "this tortured case needs to just get to trial so we can get this behind us. . . . Win lose or draw, you all need to let these individuals in that box make determinations as to where this case is going to go." As such, it appeared as if Appellee's motion for summary judgment was denied, as the trial court concluded that a trial on the merits would go forward; however, no written order relating to the Appellee's motion for summary judgment was ever entered. The case proceeded to trial on May 21, 2018.

Despite the fact that both parties filed numerous motions in limine in an attempt to exclude one another's expert witnesses, the trial court ultimately allowed both parties to present testimony from their respective expert witnesses. After the close of evidence, the trial court refused to instruct the jury on, *inter alia*, punitive damages, gross negligence, or Appellants' theory that the inhalation of seafood particles caused Decedent's death. The jury eventually returned a verdict in favor of Appellee, finding that it was not liable for Decedent's death. Appellants filed no post-trial motions; however, they filed a notice of appeal to this Court on May 31, 2018.

## ISSUES PRESENTED

Appellants raise several issues for review, which we have taken verbatim from their appellate brief:

1.   The trial court erred in denying [Appellants'] motion for partial summary judgment.
2.   The trial court erred in dismissing [Appellants'] claim for premises liability and negligence based upon the theory of inhalation of seafood.
3.   The trial court erred in dismissing [Appellants'] claims under the theories of gross negligence and product liability based upon the theory of ingestion and inhalation of seafood.
4.   The trial court erred in granting [Appellee's] motion for summary judgment.
5.   The trial court erred in failing to exclude [Appellee] witnesses Stephen Taylor, Dr. Marco Ross, and Dr. David Amrol.

6. The trial court erred in denying [Appellants'] request to instruct the jury on the claim of negligence due to inhalation and in denying [sic] request for jury instruction on punitive damages.

The Appellee raises no additional issues for review.

## STANDARD OF REVIEW

Regarding the review of a trial by jury, we have previously explained that [w]ith the constitutional underpinning of the right to a jury trial framing the appellate process, Tennessee Rule of Appellate Procedure 13(d) narrowly limits the role of appellate courts in reviewing the factual findings of a jury. ***Duran v. Hyundai Motor Am., Inc.***, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2013). When the factual foundation of a jury verdict is challenged on appeal, it will only be set aside when there is no material evidence to support it. Tenn. R. App. P. 13(d). Nevertheless, we review the trial court's conclusions of law de novo with no presumption of correctness. *See* ***Elchlepp v. Hatfield***, 294 S.W.3d 146, 149 (Tenn. Ct. App. 2008).

***In re Estate of Link***, 542 S.W.3d 438, 451 (Tenn. Ct. App. 2017).

## DISCUSSION

As an initial matter, we must discuss the state of the briefing in this case. Although both parties' briefs comply with the minimum mandates of Rule 27 of the Tennessee Rules of Appellate Procedure, the arguments of the parties, particularly Appellants, are often difficult to discern and unsupported by the record on appeal. However, we will attempt to address the arguments raised by Appellants as best we are able.

## I.

Appellants first argue that the trial court erred in denying their pre-trial motion for partial summary judgment filed in December of 2016. "Summary judgment is a procedural mechanism for avoiding the time and expense of trial by concluding cases that can be resolved on dispositive legal issues alone." ***In re Estate of Link***, 542 S.W.3d at 453 (citing ***Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.***, 45 S.W.3d 588, 608 (Tenn. Ct. App. 2001)). Accordingly, when a motion for summary judgment is denied on the basis that disputed material facts exist, the denial of that motion is not appealable after a trial on the merits has occurred. ***Id***; (citing ***In re Estate of Blackburn***, 253 S.W.3d 603, 611 (Tenn. Ct. App. 2007)); *see also* ***Hobson v. First State Bank***, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989) ("When the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the

overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits.").

In light of the foregoing, we decline to address Appellants' contention that the trial court erred in denying Appellants' motion for partial summary judgment. Here, the trial court clearly stated in its order denying the motion that the case was fraught with "multiple disputed issues of material fact[,]" noting specifically that the cause of Decedent's death remained "a huge issue." Because Appellants' motion was denied on the basis of outstanding disputes of material fact, and the case indeed proceeded to a trial on the merits, the trial court's denial of Appellants' motion is not an appealable issue. *See In re Estate of Link*, 542 S.W.3d at 453.

## II.

We next address Appellants' second issue for review, which appears to be twofold. We perceive Appellants' assertion here to be that (1) the trial court erred in dismissing Appellants' premises liability claim pretrial, and (2) that the trial court also erred in dismissing Appellants' common law negligence claim based upon the theory of inhalation of seafood. Consequently, we will address both of these assertions individually, beginning with the trial court's pretrial dismissal of Appellants' premises liability claim.

Appellants' claim based upon premises liability was dismissed for failure to state a claim for which relief could be granted. As such, we consider the appeal of this issue under the standard of review applicable to motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6). A Rule 12.02(6) motion to dismiss tests the legal sufficiency of the complaint. *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn.1997). When considering such a motion, we are limited to an examination of the complaint alone. *Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990).

In short, a Rule 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted, and challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof. *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). This Court upholds the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

The relevant claim here is premises liability, a form of negligence. In Tennessee, "[b]usiness proprietors are not insurers of their patrons' safety." ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting ***Blair v. W. Town Mall***, 130 S.W.3d 761, 764 (Tenn. 2004)). Property owners are, however, required to exercise due care under all the circumstances. ***Blair***, 130 S.W.3d at 764. "This general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." ***Parker***, 446 S.W.3d at 350 (citing ***Eaton v. McLain***, 891 S.W.2d 587, 594 (Tenn. 1994)). A property owner's duty, however, does not include "the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." ***Rice v. Sabir***, 979 S.W.2d 305, 308–09 (Tenn. 1998) (citations and internal quotation marks omitted).

As such, "[t]he duty applicable to premises owners only requires them to remove or warn against conditions that are, in fact, dangerous." ***Newcomb v. State***, No. M2014-00804-COA-R3-CV, 2015 WL 3956038, at *3 (Tenn. Ct. App. June 26, 2015) (citing ***Parker***, 446 S.W.3d at 350). Indeed, an owner or occupier of land cannot be liable for failing "to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition." ***Nee v. Big Creek Partners***, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002). Therefore, in order to hold a premises owner liable for an injury, there must be some evidence that a dangerous condition actually existed on the premises. ***Id.*** at 654. "'To hold otherwise would necessarily cast the premises owner in the role of an absolute insurer of the social guest's safety, which is not contemplated by our negligence law.'" ***Steele v. Primehealth Med. Ctr., P.C.***, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *10 (Tenn. Ct. App. Dec. 22, 2015) (citing ***Norfleet v. Pulte Homes Tenn. Ltd. P'ship***, No. M2011-01362-COA-R3-CV, 2011 WL 5446068, at *5 (Tenn. Ct. App. Nov. 9, 2011)).

Here, Appellants asserted in the amended complaint that Appellee was liable for Decedent's death on the basis that Appellee "failed to act reasonably, responsibly and/or with due care[,]" and that Appellee failed to adequately protect Decedent from "ingestion and/or exposure to allergens that could harm [Decedent]." The complaint further alleges that Appellee knew that Decedent suffered from some sort of seafood or shellfish allergy yet "wholly failed to implement adequate safeguards at all times material hereto." Essentially, the gravamen of Appellants' premises liability claim is that Appellee was aware of Decedent's alleged allergy, but nonetheless failed to take appropriate steps to ensure that Decedent was not exposed to harmful allergens.

The trial court entered an order on September 1, 2017, stating that the premises liability claim was dismissed with prejudice.[7] On appeal, Appellants again assert that Appellee was negligent in its preparation of Decedent's meal on the evening of December 4, 2010, and that Appellee was aware that customers could potentially suffer an allergic reaction by inhaling the smoke from the hibachi grill at the restaurant. On balance, Appellee avers in its appellate brief that none of the foregoing allegations amount to a dangerous condition such that a premises liability claim is viable under the circumstances, and that the trial court was thus correct to dismiss the premises liability claim at the outset.

Under these circumstances, we tend to agree with Appellee. Turning to the complaint, there are simply no allegations contained therein that suggest that "a dangerous condition actually existed on the premises." *Nee*, 106 S.W.3d at 653. While the complaint appears to allege that the cause of Decedent's death was Appellee's failure to properly prepare Decedent's dinner, nowhere in the complaint is there an allegation that this failure somehow amounts to a dangerous or hazardous condition on Appellee's premises. Rather, the allegations in the amended complaint suggest that the alleged harm to Decedent was caused by conduct of Appellee's employees in the course of preparing Decedent's food. As such, Appellants conflate premises liability, which stems from a property owner's "superior knowledge of *conditions of the premises*[,]" with a typical common law negligence claim. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (emphasis added). To that point, Appellant has failed to cite to a single case, in Tennessee or otherwise, in which a plaintiff successfully brought a premises liability action against a restaurant after suffering an allergic reaction to that restaurant's food; moreover, our research has not revealed the existence of single case to support the claim that this scenario is cognizable as a premises liability claim.

While we are required to construe the complaint liberally in favor of Appellants, it is not the duty of this Court "to create a claim that the pleader does not spell out in his complaint." *Moses v. Dirghangi*, 430 S.W.3d 371, 378 (Tenn. Ct. App. 2013) (citing *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002)). Indeed, "[w]hen the Court is dealing simply with allegations in pleadings . . . [we are] not free to construct additional facts or allegations." *Id.* (citing *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552 (Tenn. 1988)). Here, even giving all reasonable inference in favor of Appellants, the complaint does not allege that a dangerous condition existed on Appellee's premises on the evening of Decedent's passing. *See Wolcotts*, 807 S.W.2d at 710 (noting that we are limited to an examination of the complaint alone when considering a failure to state a claim for which relief can be granted). Instead, it appears that the gravamen of the complaint is that Decedent was harmed by the negligence of Appellee's employees in preparing his meal.[8] Moreover, Appellants concede that

_____

[7] This order contained no accompanying analysis.
[8] For example, Appellants asserted the following in support of their premises liability claim:

Appellant was a frequent diner at the Benihana restaurant and had never suffered an injury until the night of December 4, 2010; nothing in the complaint indicates that the *condition* of the restaurant changed between these prior visits and the night of Decedent's alleged injury—only the alleged conduct of Benihana employees. In the absence of both proper allegations that it was a *condition* on the premises that caused Decedent's injury, rather than the negligence of an employee, as well as relevant authority to support this claim, we decline to conclude that the trial court erred in dismissing this claim. *Cf. Nee*, 106 S.W.3d at 654 ("If no dangerous or defective condition exists, an owner or occupier cannot be held liable for failing to take action in order to remedy the supposed condition."). Because we are not free to construct additional allegations on behalf of the Appellants, we must conclude that the trial court correctly granted Appellee's motion to dismiss Appellants' premises liability claim.

We turn now to the next facet of the second issue presented for review. Specifically, Appellants assert in their brief that the trial court "erred in dismissing [Appellants'] claim for . . . negligence based upon the theory of inhalation of seafood." Respectfully, we are puzzled by this assertion. Appellants do not cite to the point in the record at which the trial court dismissed Appellants' negligence claim, nor has our own review of the record revealed when such a dismissal occurred. On the contrary, Appellants proceeded to a jury trial on their negligence claim, and the jury heard expert testimony regarding the possibility that Decedent inhaled aerosolized seafood particles on the evening he died. Accordingly, the assertion that the trial court somehow "dismissed"

---

49. [Appellee] along with its chefs, supervisors and managers failed to act reasonably, responsibly and/or with due care at all times material herein.

50. [Appellee] along with its chefs, supervisors and managers failed to provide adequate protection against ingestion and/or exposure to allergens that could harm [Decedent].

51. [Appellee] along with its chefs, supervisors and managers failed to provide proper care and assistance to [Decedent] during and after his illness from exposure to the seafood or shell fish allergens.

\* \* \*

57. [Appellee] wholly failed to implement adequate safeguards at all times material hereto.

58. [Appellee's] were in a superior position to that of [Decedent] to know the extent of past patrons who suffered allergic reactions on or about the premises of Benihana's.

59. [Appellee's] were better equipped than [Decedent] and other patrons to take appropriate measures to eliminate harm and potential for harm.

As the foregoing demonstrates, the operative complaint alludes to Appellee's failure to protect Decedent; however, it is unclear what dangerous condition Appellee is supposed to have protected Decedent from.

Appellants' negligence claim prior to trial is contrary to the record on appeal. As such, this issue lacks merit.[9]

## III.

The third issue on appeal as framed by Appellants is, again, two-fold. Specifically, Appellants urge that the trial court erred in dismissing their claims for (1) gross negligence, and (2) "product liability based upon the theory of ingestion and inhalation of seafood."

We first address the averment that the trial court erred in dismissing Appellants' claims under the theory of gross negligence. Here, Appellants yet again seem to misunderstand the events of their own trial. There is no point in the record at which the trial court outright dismissed any claim for gross negligence; rather, the trial court rejected Appellants' request, after the close of proof, for a jury instruction regarding gross negligence. Specifically, the trial court stated to Appellants' counsel that a jury instruction on gross negligence would not "be a proper instruction based on" the evidence presented at trial. Accordingly, although difficult to discern from the inartful manner in which Appellants have framed this particular issue, we perceive Appellants to be asserting that the trial court erred in its decision not to instruct the jury on gross negligence.

Tennessee Rule of Appellate Procedure 3(e) provides that

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, **jury instructions granted or refused**, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

(emphasis added). Consequently, "[i]n all civil cases tried to a jury, any ground not cited in the motion for new trial has been waived for the purposes of appeal." **Waters v. Coker**, 229 S.W.3d 682, 689 (Tenn. 2007) (citing **Boyd v. Hicks**, 774 S.W.2d 622, 625 (Tenn. Ct. App. 1989)). Indeed, as is relevant here, "any issues concerning instruction given or refused by the trial court are waived unless included in the motion for new trial." **Id.** (citing **State v. Keel**, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994)).

---

[9] To the extent that this issue concerns the purported grant of summary judgment to Appellee, it is discussed *infra*. Moreover, to the extent that this issue involves the trial court's failure to instruct the jury as to the Appellants' inhalation theory, it is waived to the same extent as his claim for gross negligence, also discussed *infra*.

In the present case, Appellants declined to file a motion for new trial. While they assert on appeal that a motion for new trial would have been futile under these circumstances, they cite no legal authority to support this argument. In the absence of a motion for new trial raising this issue or any support for their assertion that they were excused from this requirement, the issue of whether the trial court erred in refusing to instruct the jury on gross negligence is waived. *See* Tenn. R. App. P. 3(e); *see also* **Waters**, 229 S.W.3d at 689; **Fahey v. Eldridge**, 46 S.W.3d 138, 143 (Tenn. 2001).

The second portion of the third issue on appeal is Appellants' averment that the trial court erred in dismissing Appellants' claim regarding "product liability based upon the theory of ingestion and inhalation of seafood." In their appellate brief, Appellants discuss the requirements for bringing an action under the Tennessee Products Liability Act ("TPLA"), found at Tennessee Code Annotated section 29-28-101, *et seq*. Specifically, Appellants assert that they "made a prima facie showing under the TPLA" by demonstrating that the meal served to Decedent by Appellee on the evening of December 4, 2010 was "unreasonably dangerous." Appellants further assert that there "is clearly a genuine issue of material fact" in this regard.

Appellants are not entitled to relief as to this issue for several reasons. First, Appellants did not assert a products liability claim or any claim under the TPLA in the operative complaint, but rather raised this issue for this first time upon filing their motion for partial summary judgment in December of 2016.[10] Accordingly, no products liability claim was ever properly raised in the trial court, and Appellants are not entitled to relief on this issue. *See* Tenn. R. App. P. 36(a) (noting that this Court is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Even assuming that Appellants' products liability claim was viable, nothing in the record suggests that this claim was dismissed by the trial court. Indeed, there is no order of dismissal addressing such a claim, nor was any purported products liability action disposed of upon motion for summary judgment.[11] Further, Appellants did not seek jury instructions regarding products liability, the TPLA, or negligence per se. Consequently, it is simply impossible for this Court to discern what Appellants refer to in making the assertion that the trial court erred in dismissing their products liability claim; indeed, it seems that this claim was never properly raised in the trial court. As such, we need not address the merits of this issue.

---

[10] In the motion for partial summary judgment, Appellants couched their products liability claim as "negligence per se," therein asserting that "[the TPLA] gives rise to a cause of action against [Appellee] . . . the [Appellee's] failure to warn [Decedent] of the dangerous condition constitutes 'negligence per se.'"

[11] As discussed at length *infra*, there is no order in the record granting Appellee summary judgment as to any issue.

## IV.

Appellants' fourth issue for review is whether the trial court erred in granting Appellee's motion for summary judgment, filed April 11, 2018. Respectfully, this issue once again contradicts the procedural history as reflected in the record on appeal. In their brief, Appellants appear to argue that the manner in which Appellee's motion for summary judgment was set and heard was in error and prejudicial to Appellants; Appellants also attempt to explain their failure to file a response to Appellee's statement of undisputed facts. However, Appellants' explanation of this issue is largely unhelpful as the brief fails to direct this Court to the point in the record at which the trial court actually granted Appellee summary judgment as to any issue.[12] In that vein, Appellee asserts in its appellate brief that it was never granted summary judgment, and that the claims remaining in the case in fact proceeded to a trial by jury. As such, the question of whether the trial court intended to grant summary judgment to Appellee remains unclear.

While there are various points in the record that allude to the possibility that the trial court did grant summary judgment to Appellee as to some issues, there is also colloquy between the parties and the trial court in the transcript that suggests that the trial court simply denied all motions for summary judgment. Specifically, as previously discussed, in a hearing held on May 18, 2018, at which the trial court considered Appellee's motion for summary judgment, the trial court made a statement indicating that the case should be tried before a jury. On the other hand, at a different point in the transcript, when the parties and the trial court are discussing jury instructions, the trial court states the following: "At the time of the reading, arguing and ruling on the motion for summary judgment, this Court is convinced that [Appellant] had not shown that the defendants had a duty to warn as to inhalation. And that's ultimately how that ruling came about." Troublingly, the foregoing statement suggests that summary judgment was, at some point, orally granted. This confusion is exacerbated by the fact that the Appellee asserted in its trial brief that it had been awarded summary judgment, and now on appeal urges that no such motion was ever granted.[13]

Again, the parties' briefing and the record make it difficult for this Court to discern what truly occurred in the trial court. Regardless, the fact that summary judgment may well have been orally granted is of no consequence in this Court in the absence of a written order memorializing that ruling. Indeed, "it is well-settled . . . that a court speaks through its orders and not through the transcript." ***Alexander v. JB Partners***, 380 S.W.3d

---

[12] In fact, Appellants in another portion of their brief concede that a written order granting Appellee summary judgment was never entered by the trial court.

[13] While we have frequently cited Appellants' deficient briefing throughout this Opinion, on this point, Appellee's arguments are equally deficient. At different times in the trial court and on appeal, Appellee has made conflicting statements with regard to the disposition of its motion for summary judgment. These conflicting statements have only added to our difficulty in discerning the issues in this case.

- 12 -

772, 777 (Tenn. Ct. App. 2011) (citing **Steppach v. Thomas**, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011)). "As we noted in **Steppach**, we review the trial court's written orders on appeal." **Id.**; *see also* **City of Oak Ridge v. Levitt**, 493 S.W.3d 492, 503 (Tenn. Ct. App. 2015) ("In Tennessee, courts generally speak through written orders rather than oral rulings."); **Kadivar v. Fathiamirkhiz**, No. M2014-02353-COA-R3-CV, 2016 WL 2931121, at *5 (Tenn. Ct. App. May 13, 2016) (quoting **Palmer v. Palmer**, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977) ("No principle is better known than that which states that a Court speaks through its orders and decrees entered upon the minutes of the Court.")).

In light of the trial court's failure to enter a written order granting Appellee summary judgment, and the fact that Appellants were allowed to proceed to a trial on the merits of their negligence claim, we decline to conclude that the trial court committed error in purportedly granting Appellee's motion for summary judgment.

Although certainly not framed in this way, again, Appellants' issue could be perceived as arguing that the trial court erred in refusing to allow a jury instruction on the theory of inhalation of seafood as a cause of decedent's death. Here, the trial court's ruling disallowing such an instruction does mention an earlier ruling granting summary judgment on this claim on the basis of Appellants' failure to show that a duty was owed to Decedent under the circumstances. Although Appellants were permitted to present evidence related to this theory, we can conceive that a litigant could be prejudiced by a trial court's failure to follow through with granting summary judgment by written order, while using such a purported ruling to deny the litigant a jury instruction on a theory that remained part and parcel of the case. Appellants' failure to file a motion for new trial, however, forecloses review on this issue.[14] As previously discussed, Rule 3(e) requires that an appellant file a motion for new trial in order to raise issues regarding jury instructions. Tenn. R. App. P. 3(e). The purpose of a motion for new trial is to "help to ensure that the trial judge might be given an opportunity to consider or reconsider alleged errors committed during the course of the trial or other matters affecting the jury or the verdict." **Fahey v. Eldridge**, 46 S.W.3d 138, 142 (Tenn. 2001) (citing **McCormic v. Smith**, 659 S.W.2d 804, 806 (Tenn. 1983)). Further, the practice of filing a motion for new trial "significantly aids the functions of the appellate courts by limiting and defining

---

[14] We acknowledge that there are narrow instances in which the failure to raise an issue in a motion for new trial is not fatal. *See* **Waters v. Coker**, 229 S.W.3d 682, 690 (Tenn. 2007) ("Typically, an issue not brought to the trial court's attention in the motion for new trial cannot be raised on appeal unless it amounts to plain error seriously affecting the fairness, integrity, or public reputation of judicial proceedings.") (citations omitted). Here, however, Appellants have not asserted that the trial court committed plain error in connection with the failure to enter an order on Appellee's motion for summary judgment and later denying Appellants' requested jury instruction. In a similar circumstance, the Tennessee Supreme Court declined to analyze plain error where "[t]here has been no specific allegation of plain error in this instance and no argument addressing the factors permitting its application." **Id.** at 690. In the absence of any argument in support of plain error, we likewise decline to relieve Appellants from the waiver caused by their failure to file a motion for new trial.

the issues for review." *Id.*; *see also* Tenn. R. App. P. 3(e). Such a motion would have been of particular importance in the case-at-bar.

As such, to the extent that Appellants' argument on this issue is construed as contesting the trial court's refusal to allow a jury instruction on the inhalation theory given the trial court's failure to enter an order granting summary judgment, such issue is waived.

## V.

Next, Appellants urge that the trial court erred in failing to exclude various expert witnesses produced by Appellee at trial. The Tennessee Rules of Appellate Procedure provide that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e). Indeed, "[i]t has long been the rule in this state that in order to preserve errors for appeal, the appellant must first bring the alleged errors to the attention of the trial court in a motion for new trial." *Fahey*, 46 S.W.3d at 142. With regard to witness testimony, "a well-drafted motion alleging improper admission or exclusion of testimony . . . should identify the witness giving the testimony and provide a short and plain summary of the testimony improperly admitted or excluded." *Id.* at 143. As we have already discussed at length, no motion for new trial was filed in the present case, much less an explanation as to why Appellee's witnesses should have been excluded by the trial court. Consequently, we conclude that Appellants failed to preserve this issue for appellate review. *See* Tenn. R. App. P. 3(e); *Fahey*; 46 S.W.3d at 142.

## VI.

Appellants' sixth and final issue is waived on the same basis. Here, Appellants take issue with the trial court's decision not to give various instructions to the jury, including an instruction on punitive damages. As mentioned *supra*, however, Tennessee Rule of Appellate Procedure (3)(e) makes clear that " no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial." Moreover, "a well-drafted motion alleging error in the jury instructions should set forth the language of the instruction given by the court and the language of the instruction rejected by the court if an alternative instruction was requested." *Fahey*, 46 S.W.3d at 143. As such, the failure of Appellants to file a motion for new trial results in waiver of their sixth issue presented.

Again, the manner in which these Appellants have framed their arguments on appeal has made it burdensome for this Court to discern what actually occurred in the trial court, much less whether the errors alleged by Appellants have merit. This difficulty is compounded by the absence of a motion for new trial and an order adjudicating that

motion. In light of the foregoing, we conclude that Appellants have raised no issues for review that warrant relief. As the trial court aptly noted, the present matter is nothing if not "tortured." Considering the difficulty this Court experienced in divining the issues as alleged by the Appellants, we would caution future litigants that the case-at-bar highlights the great importance of filing a motion for new trial. *See* Tenn. R. App. P. 3(e); ***Fahey***, 46 S.W.3d at 142 (explaining that a motion for new trial "significantly aids the functions of the appellate courts by limiting and defining the issues for review.").

## CONCLUSION

The verdict of the jury is affirmed. Costs of this appeal are taxed to Appellants, Regina Smith and Lekeitha Moore, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE